UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLOS GARCIA,

                                    Petitioner,

        -vs-

MATTHEW WHITAKER, Acting Attorney
General of the United States; THOMAS
FEELEY, Field Office Director for
Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement DEPARTMENT OF
HOMELAND SECURITY; JEFFREY J. SEALS,
Facility Director, Buffalo Federal
Detention Facility,

                                    Respondents.

**No. 6:18-cv-06836-MAT**

**DECISION AND ORDER**

## I.    Introduction

Proceeding *pro se*, Carlos Garcia ("Garcia" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the respondents (hereinafter, "the Government")[1] challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). For the reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed without prejudice.

## II.   Factual Background and Procedural History

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), William P. Barr, Attorney General of the United States, is automatically substituted for former Acting Attorney General Matthew G. Whitaker. The Clerk of Court is requested to update the case caption to correct the spelling of defendant Jeffrey J. Searls' surname ("Searls" not "Seals").

The factual background below is drawn from the Declaration of Joseph H. Marchewka ("Marchewka Decl.") (Docket No. 4-1) and attached Exhibits (Docket No. 4-2) and documents submitted by Garcia (Docket Nos. 6-1 to 6-6).

On or about January 14, 1989, Garcia, a native and citizen of El Salvador, entered the United States near San Ysidro, California, without having been admitted or inspected by an immigration officer. On January 15, 1989, Garcia was served in San Diego, California with an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien ("OSC") charging him with being subject to deportation pursuant to the former Immigration and Nationality Act ("INA") 241(a)(2) for entering the United States without inspection. He was placed in custody with the former Immigration and Naturalization Service ("INS") and ordered to appear before an immigration judge ("IJ") at a date and time "to be determined."

The following day, January 16, 1989, Garcia was released from INS custody pursuant to an Order of Release on Recognizance ("ROR Order"). The ROR Order, read to Garcia in Spanish and signed by him, directed to him report within 15 days at 9:00 a.m. to the nearest immigration office to his address (given only as Los Angeles, California). It does not appear that ever Garcia reported to immigration authorities as directed.

About eleven and a half years later, on July 28, 1998, Garcia pleaded guilty in Suffolk County District Court, State of New York

10th Judicial District, to violating New York Vehicle and Traffic Law ("VTL") § 511.1A (Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree) and VTL § 1192.2 (Operating a Motor Vehicle Under the Influence of Drug or Alcohol). On the former conviction, he was fined $200; on the latter conviction, he was sentenced to three years' probation, fined $500, and had his driver's license revoked for six months.

Garcia appeared in Suffolk County District Court again on March 7, 2000, and subsequently on October 13, 2000. On both occasions, he pleaded guilty to violating VTL § 511A.1 (Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree) and was fined $500 and $200 on each conviction, respectively.

About six years later, on August 18, 2006, Garcia was placed in immigration removal proceedings and served with a Notice to Appear ("NTA") charging him with being subject to removal from the united states pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Through counsel, Garcia filed an I-589 Application for Asylum based on his fear of persecution in El Salvador due to his homosexuality and an I-881 Application for Special Rule Cancellation of Removal under NACARA. He also filed an I-485 Application to Adjust to Permanent Resident Status. During this time-period, Garcia was living on Long Island and working

full-time as a picker in the shipping department Regents Sports Corporation.

On July 2, 2010, Garcia was arrested in Suffolk County, New York on multiple counts of selling drugs and firearms. By Indictment #1782A-2010, Garcia was charged with Criminal Sale of a Controlled Substance in the First Degree, two counts of Criminal Sale of a Controlled Substance in the Second Degree, Criminal Sale of a Controlled Substance in the Third Degree, Criminal Sale of a Firearm in the First Degree and Conspiracy in the Fourth Degree based on his alleged sale of various quantities of on multiple dates in 2009 and 2010, as well his entry into a conspiracy with his brother, who resided in Florida, to purchase and sell ten or more firearms.

While he was awaiting disposition of this criminal case, he was detained at the Suffolk County Correctional Facility. DHS officers encountered Garcia there on July 8, 2010. After interviewing him, DHS officers identified Garcia identified as a criminal alien and issued a Warrant for Arrest of Alien. On May 12, 2011, an IJ administratively closed Garcia's pending immigration removal proceedings in light of his incarceration on the State criminal charges.

On March 14, 2012, Garcia pleaded guilty in the New York State Supreme Court, County of Suffolk, to Criminal Possession of a Controlled Substance in the First Degree and Criminal Sale of a

Firearm in the First Degree, in satisfaction of Indictment #1782A-2010. On July 31, 2013, he was sentenced to eight years' imprisonment and five years' post-release supervision ("PRS") on the drug-sale conviction and nine years' imprisonment and five years' PRS on the weapons-sale conviction. On direct appeal, his conviction was affirmed by the Appellate Division, Second Department, of New York State Supreme Court by order dated June 17, 2015. *People v. Garcia*, 10 N.Y.S.3d 445 (2d Dep't 2015).

On August 22, 2013, DHS officers encountered Garcia at the Downstate Correctional Facility in Fishkill, New York, where he was incarcerated. After verifying Garcia's immigration status, DHS determined that immigration removal proceedings would be reopened and a detainer lodged against him. Upon being released from State custody on March 15, 2018, Garcia was taken into DHS custody.

By a notice dated April 3, 2018, Garcia, through his attorney, Laura M. Ortiz, Esq. ("Attorney Ortiz"), was notified that a hearing pertaining to his removal was scheduled before an IJ on April 16, 2018. Apparently, Attorney Ortiz filed a motion to withdraw as counsel on April 9, 2018.

On April 13, 2018, DHS served Garcia with Additional Charges of Inadmissibility/Deportability based on INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien who has been convicted of a crime involving moral turpitude; INA § 212(a)(6)(A)(i)(II), 8 U.S.C. § 1182(a)(6)(A)(i)(II), as an alien who has been convicted

of a crime relating to a controlled substance violation; INA §
212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B), as an alien who has been
convicted of two or more offenses for which the aggregate sentences
to confinement actually imposed were five years or more; and INA §
212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C), as an alien who is or has
been an illicit trafficker in any controlled substances or who is
or has been a knowing assister, abettor, conspirator, or colluder
with others in illicit trafficking in any such controlled
substance.

On April 16, 2018, an IJ granted Attorney Ortiz's motion to
withdraw as Garcia's counsel and re-scheduled the next hearing for
April 23, 2018. At the April 23, 2018 hearing, Garcia appeared
without counsel. The IJ re-scheduled proceedings until May 9, 2018,
to allow Garcia additional time to find an attorney.

On May 9, 2018, Garcia appeared before an IJ with his new
attorney, Robert Graziano, Esq. ("Attorney Graziano"). The IJ
adjourned the proceedings until June 4, 2018.

On June 4, 2018, Garcia appeared before IJ Steven J. Connelly
with Attorney Graziano for a master calendar hearing and to be
heard on Garcia's request for a change in custody status pursuant
to 8 C.F.R. § 236.1(c). Following the hearing, the IJ denied
Garcia's request for a change in custody status, and Garcia waived
his right to appeal the IJ's decision. During the master calendar
hearing, Attorney Graziano indicated that Garcia would be applying

for applications for relief from removal. The IJ set a deadline of July 31, 2018, for such filings and adjourned further proceedings until August 21, 2018.

However, Attorney Graziano did not file applications for relief from removal on Garcia's behalf by the July 31st deadline. Instead, on August 17, 2018, Attorney Graziano filed a motion to have the IJ accept a late filing.

On August 21, 2018, Garcia appeared with Attorney Graziano for a master calendar hearing. The IJ determined that Garcia had abandoned all relief applications due to his failure to file an asylum application by the court's deadline of July 31, 2018. The IJ also ordered Garcia removed from the United States to El Salvador. Garcia reserved his right to appeal the IJ's decision.

In an order dated September 21, 2018, the IJ denied Garcia's motion to reopen his removal proceedings. On September 24, 2018, Garcia, through Attorney Graziano, filed with the Board of Immigration Appeals ("BIA") an appeal of the IJ's order of removal. Also through counsel, Garcia filed a motion to remand on November 1, 2018, based on ineffective assistance of immigration counsel. Attorney Graziano conceded that his failure to timely file Garcia's asylum application was his fault alone and argued that his error greatly prejudiced Garcia, who has a strong claim for relief based on his membership in a particular social group consisting of

homosexual El Salvadoran men, and his fear of persecution or torture on that basis.

In an Order dated January 28, 2019, the BIA granted Garcia's motion to remand, finding that it was clear on the face of the record that his attorney's failure to timely file the asylum application was ineffective assistance of counsel because it deprived Garcia of his ability to apply for relief from removal. The BIA further concluded that counsel's failure to file the asylum application by the deadline without reasonable explanation constituted performance so ineffective as to have impinged on the fundamental fairness of the proceedings. Accordingly, the BIA directed the IJ to conduct a full and complete hearing on Garcia's requests for relief. The BIA indicated that because it was "remanding the record," it would not address Garcia's other arguments on appeal.

On April 23, 2019, Garcia and Attorney Graziano appeared before an IJ for a merits hearing on Garcia's requests for relief from removal. At the conclusion of the hearing, the IJ denied Garcia's application for asylum; denied his application for withholding of removal and deferral of removal under Article III of the Convention Against Torture; and ordered him removed from the United States to El Salvador. Garcia reserved his right to appeal the IJ's decision, but the deadline to file an appeal expired on May 23, 2019.

As of May 17, 2019, the date on which the Government timely filed an Answer and Return and Memorandum of Law, Garcia had not filed an appeal with the BIA.

Meanwhile, on November 22, 2018, Garcia filed his Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") in this Court asserting that his detention violates INA § 241 and the Interim Regulations (Count One); and his detention violates substantive due process because he cannot be removed and his detention therefore is indefinite (Count Two). Garcia requested this Court issue an order requiring the Government to release him because there is no likelihood that he will be removed to El Salvador in the reasonably foreseeable future; and requiring the Government not to remove Garcia from the Western District of New York during the pendency of the Petition.

On May 17, 2019, the Government filed an Answer and Return (Docket No. 4) along with Exhibits (Docket Nos. 4-1, 4-2 & 4-3) and a Memorandum of Law (Docket No. 5).

In response to the Government's Answer and Return, Garcia filed a Memorandum of Law (Docket No. 6-1), Declaration (Docket No. 6-2), Exhibits (Docket No. 6-3), Reply (Docket No. 6-4), and "Appeal to Immigration Court" (Docket No. 6-5), asserting different claims than raised in his Petition. He contends that his detention without a bond hearing violates his right to due process under the Fifth Amendment because his detention has become unreasonably

prolonged. He also asserts that his continued detention violates the Eighth Amendment's excessive bail clause.

On July 10, 2019, this Court issued an Order (Docket No. 7) directing the Government to provide supplemental information on the question of whether Petitioner has appealed his removal order to the BIA and, if so, the status of his appeal; and whether Petitioner has filed a Petition for Review or any other request for relief with the Second Circuit and, if so, the status of such request(s).

On July 18, 2019, the Court received from Garcia a copy of a Memorandum from Suffolk County Court dated June 26, 2019, acknowledging receipt of correspondence and informing him that "[m]otions must comply with all provisions of CPLR Article 22." It is unclear why Garcia filed this document with this Court. Also received from Garcia on July 18, 2019, was a "Filing Receipt for Appeal" from the BIA dated June 24, 2019.

On July 30, 2019, the Government filed a Declaration of Deportation Officer Joseph Marchewka (Docket No. 9) in response to the July 10, 2019 Order. The Government indicates that the BIA accepted Petitioner's late appeal on June 24, 2019. The Government attached a copy of the same filing receipt that Garcia submitted. Apparently, the BIA has not yet issued a briefing schedule on Garcia's appeal.

**III.  Scope of Review**

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of

challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

## IV. Discussion

### A. Detention in Violation of INA § 241 and the Interim Regulations

Citing *Zadvydas*, 533 U.S. at 699-700, Garcia asserts that Section 241 of the INA does not authorize ICE to detain indefinitely an alien subject to a final order of removal. However, Petitioner is presently detained pursuant to 8 U.S.C. § 1226(c) because the IJ's order of removal is on appeal before the BIA. In other words, the IJ's order is not deemed a "final" order of removal, and Garcia is not detained pursuant to INA § 241, 8 U.S.C. § 1231. Therefore, Garcia does not have a colorable claim under INA § 241.

**B.    Due Process Claims**

**1.    Overview**

Under the "Count One" heading in the Petition, Garcia asserts that his detention is indefinite because he cannot be removed from the United States, and therefore his detention violates substantive due process. To the extent that Garcia claims that he "cannot be removed," this assertion is premature given that he is not under a final order of removal; thus, ICE has not yet attempted to execute his removal to El Salvador. As an aside, the Court notes that there do not appear to be any institutional barriers to Garcia's repatriation to El Salvador assuming that his removal order is affirmed and his applications for relief from removal are denied.

Under Count Two, which also is denominated "Substantive Due Process," Garcia asserts that he is a lawful permanent resident,[2] and that his "continued indefinite detention without a hearing before an impartial adjudicator infringes upon his right to procedural due process in violation of the Fifth Amendment." The Government argues that Garcia already has had one bond hearing and that he is not entitled to a second one as a matter of statutory, regulatory, or constitutional law. The Government further argues that Garcia's detention is neither indefinite nor unreasonable because it has a definite end-point (i.e., the conclusion of his

---

[2]

Garcia's assertion that he is a lawful permanent resident ("LPR") is not substantiated by the record before the Court. He entered the country illegally and there is no evidence that he ever was accorded LPR status.

removal proceedings) and because Garcia has acted to prolong his detention by challenging the IJ's removal order.

## 2. Statutory and Regulatory Framework

As an initial matter, the Court observes that the Government's reference to Garcia having had a bond hearing is not entirely accurate. As explained below, Garcia has not had a bond hearing as that term is generally understood; that is, he has not had a neutral decision-maker consider whether he is a flight risk or a danger to the community. Nor is Garcia eligible for one as a matter of regulatory or statutory law. Garcia is detained pursuant to 8 U.S.C. § 1226(c), which provides for mandatory detention of certain criminal aliens:

> (1) Custody. The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release.

The Attorney General may release an alien described in paragraph (1) only [in limited circumstances that are not applicable in Garcia's case].[3]

8 U.S.C.A. § 1226(c)(West 2019) (footnote omitted).

Three of the charges in the Government's Additional Charges of Inadmissibility/Deportability issued on April 13, 2018, relate to Garcia having committed offenses "covered in [Title 8 U.S.C.] section 1182(a)(2)[,]" 8 U.S.C. § 1226(c)(1)(A). Thus, assuming the correctness of the Charges of Inadmissibility/Deportability, Garcia is ineligible for release under the statute and regulations.

While the applicable statute and regulations prohibit an IJ from releasing an individual detained pursuant to Section 1226(c), *see* 8 C.F.R. § 1003.19(h)(2)(i)(D), a person detained under § 1226(c) may request a hearing before an IJ to assess whether he or she is actually subject to mandatory detention under the statute. *Hernandez v. Decker*, No. 18-CV-5026(ALC), 2018 WL 3579108, at *2 n.4 (S.D.N.Y. July 25, 2018), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019) (citing 8 C.F.R. § 1003.19(a), (b), and (h)(2)(ii); *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). Such a hearing, known as a "*Joseph* hearing," "charges ICE with the initial burden of showing there is 'reason to believe'

---

[3] "[T]he Attorney General 'may release' one of those aliens 'only if the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk, § 1226(c)(2)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 833 (2018) (quoting 8 U.S.C. § 1226(c)).

that the detained alien is deportable or admissible under a ground listed in Section 1226(c)(1)(A)-(D)." *Id.* (quoting *Matter of Joseph*, 22 I. & N. Dec.at 803-04; citing *Matter of U-H-*, 23 I. & N. Dec. 355, 356 (BIA 2002) ("reason to believe" standard is equivalent to "probable cause" standard)).

Once ICE has carried that burden, an alien "may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [ICE] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003) (citations omitted)). In other words, an individual detained under § 1226(c) may secure a bond hearing only if he or she is able to affirmatively demonstrate that the Government's charges are meritless, and therefore, he or she is not "properly included" under § 1226(c). *Matter of Joseph*, 22 I. & N. Dec. at 806 ("[A] lawful permanent resident will not be considered 'properly included' in a mandatory detention category when an Immigration Judge . . . is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention"); *see also id.* at 807 ("In requiring that the Immigration Judge be convinced that the [Government] is substantially unlikely to prevail on its charge, when making this determination before the resolution of the underlying case, we

provide both significant weight to the [Government]'s 'reason to believe' that led to the charge and genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue.").

Here, it appears that Garcia had a *Joseph* hearing although there is no transcript of the hearing,[4] just the "check the box" "Order Of The Immigration Judge With Respect To Custody" ("Custody Order") issued by the IJ on June 4, 2018. *See* Docket No. 4-2, p. 13 of 54. The Custody Order indicates that Garcia's request for a change in custody status was denied; the box next to "OTHER" is checked and there the following handwritten notation: "INA 236(c) applies per INA § 212(a)(2)(A)(i)(II)". Docket No. 6-3,[5] p. 44 of 166. Thus, the IJ apparently found that Garcia was convicted of one or more of the predicate crimes in the Additional Charges of Inadmissibility/Deportability, rendering him subject to mandatory detention without a bond hearing. The word "waived" next to "APPEAL" has been circled. However, Garcia, acting *pro se*, submitted a "Bail Bond Request from Respondent" to the Immigration

---

[4]

"*Joseph* hearings are not contemporaneously recorded verbatim as a matter of policy; rather, *Joseph* hearings are normally summarized by the IJ's order determining that a noncitizen is subject to mandatory detention or is eligible for a bond hearing. However, when a party appeals a *Joseph* decision, the IJ drafts a short bond memorandum providing the reasons for his or her decision in that context." *Gayle v. Johnson*, 81 F. Supp.3d 371, 381 (D. N.J. 2015), *vacated on other grounds and remanded sub nom. Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016).

[5]

The copy submitted by the Government as part of Docket No. 4-2 is illegible; the copy submitted by Garcia as part of Docket No. 6-3 is legible.

Court on June 15, 2018; these documents were rejected for filing because Garcia was represented and because, based on the June 4, 2018 hearing, the IJ "does not have jurisdiction to set bail in your case." Docket No. 6-3, p. 43 of 116.

There appears to be no dispute at this juncture that Garcia is statutorily subject to mandatory detention during the pendency of his withholding-only proceedings. The Court turns next to the question of what, if any, due process limitations are there on mandatory detention of criminal aliens.

### 3. Constitutional Analysis

In *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), the Second Circuit concluded that mandatory detention under Section 1226(c) could become so prolonged that it would violate the alien's due process right. *See id.* at 613-14 ("[M]andatory detention under section 1226(c) is permissible, but that there must be some procedural safeguard in place for immigrants detained for months without a hearing. Accordingly, we join every other circuit that has considered this issue, as well as the government, in concluding that in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation.") (collecting cases). The Second Circuit went one step further and, applying the canon of constitutional avoidance, construed Section 1226(c) to require that an alien be afforded a bail hearing before an immigration judge

within six months of his or her detention at which the Government must prove by clear and convincing evidence that the alien is a flight risk or a danger to the community. *Lora*, 804 F.3d at 616 (citation and footnote omitted).

The Supreme Court rejected that approach in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), reversing the Ninth Circuit case on which *Lora*'s analysis heavily relied. The Supreme Court held that application of the canon of constitutional avoidance was erroneous because "[Section] 1226(c) does not on its face limit the length of the detention it authorizes." *Id.* at 846. The Ninth Circuit's interpretation of that provision to "include an implicit 6-month time limit on the length of mandatory detention," the *Jennings* court reasoned, "falls far short of a plausible statutory construction." *Id.* (internal quotation marks omitted).

Several weeks after deciding *Jennings*, the Supreme Court granted *certiorari* in *Lora*, vacated the Second Circuit's judgment, and remanded the case "for further consideration in light of *Jennings*." 138 S. Ct. 1260. The Second Circuit did not have occasion to consider *Jennings*' effect because, in the interim, the petitioner had received cancellation of removal and had been released. Accordingly, the Circuit dismissed the case as moot. *Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018) (summary order).

While the Supreme Court in *Jennings* found nothing in § 1226(c)'s language that would be interpreted as requiring periodic

bond hearings, it expressly "d[id] not reach" the constitutional question of whether, as the Second Circuit had held in *Lora*, the Fifth Amendment's Due Process Clause prohibits the prolonged detention of an alien without a bond hearing. *Id.* at 851. Instead, it remanded the aliens' constitutional arguments to the Ninth Circuit for consideration in the first instance. 138 S. Ct. at 851; *see also Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), *as amended* (May 22, 2018) (discussing *Jennings* and remanding case to district court for consideration in the first instance of the appropriate remedy for alien detained under § 1226(c)). Thus, *Jennings* left open the possibility that individual detentions without bond hearings might eventually violate due process. *See Hechavarria*, 891 F.3d at 58; *Cabral v. Decker*, 331 F. Supp.3d 255, 260 (S.D.N.Y. 2018) (citing *Sajous v. Decker*, No. 18cv2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018)).

Since *Jennings* called into question whether due process requires a six-month bright-line limitation on the detention of aliens under § 1226(c), district courts in this Circuit and other circuits have applied a "fact-based analysis" to determine whether mandatory detention under Section 1226(c) has become unreasonable. *See*, *e.g.*, *Cabral*, 2018 WL 4521199, at *4 (collecting cases). In *Sajous*, for example, the district court examined five factors to determine whether the petitioner's continued detention without a bond hearing had become unreasonable: (i) "the length of time the

alien has already been detained"; (ii) "whether the alien is responsible for the delay"; (iii) "whether the detained alien has asserted defenses to removal"; (iv) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (v) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Sajous*, 2018 WL 2357266, at *10–*11 (internal quotations omitted). District courts have identified "other pertinent factors including 'which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention.'" *Traore v. Ahrendt*, No. 18-CV-794(JMF), 2018 WL 2041710, at *1 (S.D.N.Y. Apr. 30, 2018) (quoting *Johnson v. Orsino*, 942 F. Supp.2d 396, 409 (S.D.N.Y. 2013); other quotation and citation omitted).

The Court turns first to the length of the detention—here, Garcia will have been detained without a bond hearing 17 months as of August 15, 2018. The length of his proceedings to date is not insignificant and, accordingly, the Court finds that it weighs in his favor. On the other hand, 17 months does not exceed the time Garcia spent in prison for the crimes that have rendered him inadmissible. As discussed above, Garcia's most recent convictions subjected him to an aggregate determinate sentence of 9 years' imprisonment; however, it appears that Garcia served approximately

4 years and 8 months in prison (from July 2013, until March 2018, when he was taken into DHS custody). The fact that Garcia has not been civilly detained longer than the time he was actually incarcerated for the predicate crimes weighs against finding a due process violation.

Also, "the sheer length of the proceedings is not alone determinative of reasonableness," *Debel*, 2014 WL 1689042, at *5, and courts in this Circuit routinely have found periods of detention comparable to or greater than Garcia's to be constitutional. *See*, *e.g.*, *Richardson v. Shanahan*, No. 15 CIV. 4405 AJP, 2015 WL 5813330, at *6 (S.D.N.Y. Oct. 6, 2015) (citing *Hylton v. Shanahan*, 15 Civ. 1243, 2015 WL 36044328, at *1, *5–6 (S.D.N.Y. June 9, 2015) (23-month detention constitutional); *Baker v. Johnson*, 2015 WL 2359251, at *13 (11-month detention at time of filing and likely 15 to 17-month total detention constitutional); *Vaskovska v. Holder*, No. 14-CV-270, 2014 WL 4659316, at *1-*4 (W.D.N.Y. Sept. 17, 2014) (15 month detention by date opinion issued constitutional); *Debel*, 2014 WL 1689042, at *6 (18-month detention constitutional even though total detention time ultimately was "likely" to exceed 2 years); *Johnson*, 942 F. Supp.2d, at 408–10 (15-month detention constitutional); *Johnson v. Phillips*, No. 10-CV-480, 2010 WL 6512350 at *6-*7 (W.D.N.Y. Dec. 20, 2010) (17-month detention), *report & rec. adopted*, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); *Luna-Aponte v. Holder*, 743 F.

Supp.2d 189, 197 (W.D.N.Y. 2010) (detention for over 3 years constitutional); *Adreenko v. Holder*, 09 Civ. 8535, 2010 WL 2900363, at *3–*4 (S.D.N.Y. June 25, 2010) (13-month detention constitutional); *Adler v. U.S. Dep't of Homeland Sec.*, 09 Civ. 4093, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15-month detention constitutional)).

Significantly, there is no evidence that the proceedings have been prolonged by dilatory tactics on the part of the Government. *See Debel v. Dubois*, No. 13-CV-6028(LTS)(JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014) ("[T]he principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action.")); *see also Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring) ("Were there to be an *unreasonable delay by the INS in pursuing and completing deportation proceedings*, it could become necessary then to inquire whether the detention [under § 1226(c)] is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. . . .") (emphasis supplied). The Second Circuit has indicated that this factor weighs against an alien who has "'substantially prolonged his stay by abusing the processes provided to him,'" but not "an immigrant[, such as Garcia,] who simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S.

418, 436 (2009)). The Court accordingly finds that neither party is at fault for any delay, which appears largely due to the burgeoning case docket of the Immigration Court in Batavia.

Next, courts have considered whether the detained alien has asserted colorable defenses to removal. Garcia has filed applications for asylum and for deferral of removal under Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, p. 20, 1465 U.N.T.S. 85; 8 CFR § 1208.17(a) (2012). He asserts that his "claim for relief is viable" and that he has "a strong likelihood of success," yet also states that he "does not challenge the decision of IJ. . . ." Docket No. 6-1, p. 11 of 19. At best, Garcia has made no showing to this Court regarding the potential merits of his appeal; at worst, he appears to concede the correctness of the IJ's decision. This weighs against any finding of a due process violation. *See*, *e.g.*, *Young v. Aviles*, 99 F. Supp.3d 443, 453-54 (S.D.N.Y. 2015) (noting that "an application for cancellation of removal is not a challenge to removability, but rather a request for discretionary relief and finding that because the petitioner "provid[ed] no detail," it was "impossible for the Court to conclude that his asylum application represents a substantial challenge to removal").

As to the factor that considers whether the facility where the alien is detained "is meaningfully different" from a facility used

for criminal detention, the Government has submitted a declaration from Kyle A. Hobart ("Hobart") ("Hobart Decl.") (Docket No. 4-3). Hobart, the Assistant Officer in Charge at the BFDF, describes in detail the living conditions, facilities, and programs available to detainees housed there. Hobart indicates that persons held at BFDF generally do not face the same level of restrictions typical for someone held at a prison. *See* Hobart Decl. ¶ 7. For instance, Hobart states that at night, most persons held at BFDF are not locked in a cell, as would be typical in a prison. *Id.* ¶ 8. Hobart avers that detainees have access to tablets that provide entertainment in the form of movies, music and video games. *Id.* ¶ 7. In addition, they have considerable access to the law library for legal research using law books, computers, and tablets; the BFDF's visitation schedule allows for "virtually unlimited attorney visitation and phone calls for case review and preparation." *Id.* ¶ 9. While there are more restrictions on movement for detainees "with significant criminal histories," Garcia has not described in particular what his living conditions are; he simply states that he faces "stress and anxiety issues" at the BFDF which is "not different than other penal institutions[.]" Docket No. 6-1, p. 11 of 19. Lacking any detail about Garcia's own experience at the BFDF, and in light of Hobart's declaration setting forth a number of factors that differentiate the BFDF from a typical correctional facility, this factor does not weigh in Garcia's favor.

Considering all of the factors in total, the only factor that weighs in Garcia's favor is the length of his detention but, as courts have found, that factor is not to be considered in isolation. The other factors either weigh in the Government's favor or are neutral at this point due to the lack of information available to the Court. The Court finds that Garcia's detention without a bond hearing has not been so unreasonably long as to violate his constitutional due process. "Nevertheless, '[i]f, at some point in the future, there are factors involving the length of his detention [that] implicate constitutional concerns, the petitioner is entitled to file another habeas petition.'" *Young*, 99 F. Supp.3d at 456 (quoting *Andreenko*, 2010 WL 2900363, at *4 (citing cases; footnote omitted).

### C. The Eighth Amendment Claim

Garcia asserts that his prolonged detention violates the Eighth Amendment which prohibits "excessive bail." Here, Garcia has not been granted release on bond; thus, he has no basis for arguing that the Government is asking him to pay an excessive amount of bail in order to be released from custody. Therefore, this contention lacks merit.

## V. Conclusion

For the foregoing reasons, the Petition therefore is dismissed without prejudice with leave to refile if or when Garcia's

detention becomes unreasonably prolonged.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

*s/ Michael A. Telesca*

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     August 13, 2019
           Rochester, New York.